IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DAWUD HAYNES,                           :       CIVIL ACTION
                                        :       NO. 14-6993
          Petitioner,                   :
                                        :
     v.                                 :
                                        :
THE DISTRICT ATTORNEY OF THE            :
     COUNTY OF _____, et al.,       :
                                        :
          Respondents.                  :



M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           February 21, 2017


          Dawud Haynes ("Petitioner") is a Pennsylvania state

prisoner. Petitioner filed a pro se application seeking relief

through a writ of habeas corpus pursuant to 28 U.S.C. § 2254

("Habeas Petition"). Magistrate Judge Marilyn Heffley ("Judge

Heffley") recommended that the Court dismiss the Habeas

Petition. For the reasons that follow, the Court will overrule

Petitioner's objections and approve and adopt Judge Heffley's

Report and Recommendation ("R&R").

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

In September 2005, Petitioner shot and killed Kevin Robbins, who refused to give Petitioner the bag of cigarettes and incense he was selling on a Philadelphia block. R&R at 2, ECF No. 17. On March 23, 2007, following a bench trial in the Court of Common Pleas, Petitioner was convicted of second-degree murder, robbery, and possession of an instrument of crime. Id. at 1. The trial court later imposed a life sentence for second-degree murder and a consecutive sentence of 16 to 48 months of imprisonment for possession of an instrument of crime. Id. at 1-2.

On direct appeal, Petitioner argued that the evidence was insufficient to support his conviction. Id. at 2. The Superior Court disagreed and denied his appeal. Commonwealth v. Haynes, No. 1300 EDA 2007, slip op. at 7 (Pa. Super. Ct. June 5, 2008), ECF No. 16-1. The Pennsylvania Supreme Court also denied Petitioner's request for allowance of appeal. R&R at 2. Petitioner then filed a petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"); his petition was denied on August 28, 2012. Id. at 2-3. The Pennsylvania Superior Court affirmed that denial on March 17, 2014, and the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal on October 1, 2014. Id. at 3.

Petitioner filed the instant Habeas Petition on
December 8, 2014. ECF No. 1. Respondents filed a Response on
October 15, 2015, ECF No. 16, and Judge Heffley filed the R&R on
March 11, 2016, ECF No. 17. Petitioner filed timely objections,
ECF No. 18, which are now ripe for disposition.

## II.   LEGAL STANDARD

The Court may refer an application for a writ of
habeas corpus to a United States magistrate judge for a report
and recommendation. 28 U.S.C. § 636(b)(1)(B). A prisoner may
object to the magistrate judge's report and recommendation
within fourteen days after being served with a copy thereof. See
§ 636(b)(1); E.D. Pa. R. Civ. P. 72.1(IV)(b). The Court must
then "make a de novo determination of those portions of the
report or specified proposed findings or recommendations to
which objection is made." § 636(b)(1). The Court does not review
general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d
Cir. 2011) ("We have provided that § 636(b)(1) requires district
courts to review such objections de novo unless the objection is
'not timely or not specific.'" (quoting Goney v. Clark, 749 F.2d
5, 6-7 (3d Cir. 1984))). The Court "may accept, reject, or
modify, in whole or in part, the findings or recommendations
made by the magistrate judge." 28 U.S.C. § 636(b)(1).

On habeas review, the Court must determine whether the
state court's adjudication of the claims raised was (1) contrary
to, or an unreasonable application of, clearly established
federal law, or (2) based on an unreasonable determination of
the facts in light of the evidence presented. See 28 U.S.C.
§ 2254(d).

## III. DISCUSSION

The Habeas Petition contains four claims: (1) the
evidence was insufficient to support Petitioner's conviction;
(2) counsel was ineffective in failing to move to suppress
certain evidence obtained in a search of Petitioner's mother's
house; (3) counsel was ineffective in failing to investigate and
present an alibi witness; and (4) counsel was ineffective in
failing to offer an expert in firearms and ammunition. See ECF
No. 1. Judge Heffley concluded that each of these claims is
meritless. Petitioner objects as to each claim.

### A.   Sufficiency of the Evidence

On direct review of the sufficiency of the evidence to
support a conviction, "the relevant question is whether, after
viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also id. at

324. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court does not itself apply the Jackson standard. Rather, the question for this Court is whether the state court reasonably applied the Jackson standard. See 28 U.S.C. § 2254(d); Eley v. Erickson, 712 F.3d 837, 853 (3d Cir. 2013) ("[I]n addition to the first layer of deference we owe to the jury under Jackson, we owe a second layer of deference to the Superior Court under AEDPA."). As a result, a federal court may "overturn a state court decision rejecting a sufficiency of the evidence challenge" only if "the state court decision was 'objectively unreasonable.'" Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 733 (2010)).

Here, Petitioner specifically argues that the evidence was insufficient to support his conviction for second-degree murder. The question, then, is whether the state court's decision to uphold Petitioner's conviction for second-degree murder was objectively unreasonable.

In Pennsylvania, "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration

5

of a felony." 18 Pa. Cons. Stat. Ann. § 2502(b). "Perpetration

of a felony" is defined, in relevant part, as "engaging in . . .

or attempting to commit robbery." Id. § 2502(d).

On direct review of Petitioner's conviction, the

Pennsylvania Superior Court concluded "that there was sufficient

evidence to support the trial court's finding that the killing

was perpetrated in furtherance of a robbery." Haynes, No. 1300

EDA 2007, slip op. at 5. The Superior Court summarized the

evidence as follows:

> At trial, three eyewitnesses testified that they saw
> Robbins being shot with a shotgun on the night of the
> murder. All three witnesses testified that they knew
> Haynes personally. Michael Woodson ("Woodson")
> identified Haynes as the shooter. Although not
> physically able to see the gun used, Woodson noted
> that the sound of the blast was much louder than a
> handgun. Shawn Newsome ("Newsome") also positively
> identified Haynes as the shooter. Newsome stated that
> just prior to the murder, he was with Haynes when
> Haynes retrieved a shotgun from a vacant lot near the
> site of the murder and saw Haynes conceal that weapon
> in a leg of his pants. Newsome also stated that he
> witnessed Haynes wield the shotgun at Robbins and
> state, "Give it up." Newsome testified that Robbins
> was carrying a black shoulder bag at the time. Newsome
> heard Robbins state that he would not give up while he
> grabbed the shotgun and was ultimately shot.
>
> A third eyewitness, Reginald Ming ("Ming")
> witnessed the shooting from a second-story window
> close to the murder scene. Ming testified that he was
> not able to identify the shooter, but saw Robbins
> "arguing and tussling over a [shoulder] bag." Ming
> further stated that he witnessed the shooter draw a
> shotgun and that he "heard the gun go off, but they
> were still tussling over the bag."

The physical evidence presented at trial corroborated the aforementioned testimony. A medical examiner testified that Robbins died of a single gunshot wound to his chest and that the wound was consistent with the shotgun slug which was recovered during the autopsy. In addition, Detective Gary White ("Detective White") testified that, pursuant to the issued search warrant in this case, shotgun "slug" ammunition which matched the "slug" recovered from Robbins' body were found at the house where Haynes was residing.

Id. at 5-6 (citations omitted).

Petitioner contends that this evidence does not support a conviction for second-degree murder for two reasons: (1) there is "no evidence that the perpetrator remove[d] any property from the victim," Pet'r's Mem. Law at 2, ECF No. 7, and (2) the witnesses who testified about Petitioner's attempt to take the victim's bag of goods were not credible, id. at 2-4.

Petitioner's first argument is unavailing because an individual can commit robbery, or attempt to commit robbery, without removing any property from the victim. For example, "[a] person is guilty of robbery if, in the course of committing a theft" – or in attempting to commit a theft – the person "inflicts serious bodily injury upon another." 18 Pa. Cons. Stat. Ann. § 3701(a)(1)(i) & (a)(2). Therefore, a factfinder can reasonably conclude that a defendant committed robbery, or attempted to commit robbery, even if the defendant did not successfully take any property from the victim. And, in turn, that robbery or attempted robbery can serve as the felony

7

underlying a second-degree murder conviction. Accordingly, it is irrelevant whether Petitioner actually took anything from the victim.

Petitioner's second argument – that the evidence was insufficient because Government witnesses were not credible – is equally fruitless. "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Indeed, under the Jackson standard, "the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995). The proper question is not whether the witnesses were credible, but "whether there is sufficient evidence which, if credited, could support the conviction." Id. (emphasis added). There is such evidence here, and so the state court's conclusion that Petitioner's convicted was supported by sufficient evidence was not objectively unreasonable.

Petitioner's claim of insufficient evidence is therefore meritless.

B.    Ineffective Assistance Claims

Petitioner also claims that his counsel was ineffective in several ways.

8

A § 2254 petition can be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of habeas corpus," "[t]he principles governing ineffectiveness should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The court's "scrutiny of counsel's performance must be highly deferential." Id. at 689. Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Id. at 690. Next, the court

must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### 1. Failure to Move to Suppress

First, Petitioner contends that trial counsel was ineffective for failing "to file and litigate a pretrial motion to suppress alleged evidence secured as a result of a search of petitioner's mother's house." Pet'r's Mem. Law at 6. The evidence at issue was shotgun ammunition. Id. Specifically, Petitioner argues that the affidavit upon which the search warrant was based was insufficient to establish probable cause. Id.

It is well established that, in considering whether there is probable cause to issue a search warrant,

> [t]he task of the issuing magistrate is simply to make
> a practical, common-sense decision whether, given all
> the circumstances set forth in the affidavit before
> him, including the "veracity" and "basis of knowledge"

10

of persons supplying hearsay information, there is a
fair probability that contraband or evidence of a
crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983). "A magistrate's

'determination of probable cause should be paid great deference

by reviewing courts.'" Id. at 236 (quoting Spinelli v. United

States, 393 U.S. 410, 419 (1969)). "And the duty of a reviewing

court is simply to ensure that the magistrate had a 'substantial

basis for . . . conclud[ing]' that probable cause existed." Id.

at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271

(1960)).

Petitioner raised this issue in his PCRA petition. The

Superior Court, in affirming the denial of the PCRA petition,

stated the following:

> Here, the affidavit of probable cause sought a
> warrant to search Appellant's home for gun ammunition
> and unspecified 'fruits of the crime.' In support, the
> affidavit recited an eyewitness account of the crime,
> Appellant's positive identification as the
> perpetrator, and Appellant's last known address.
> Without question, the affidavit established a
> probability that evidence of Appellant's crime would
> be found at his home. A warrant was properly issued,
> and therefore, Appellant cannot establish trial
> counsel's ineffectiveness.

Commonwealth v. Haynes, No. 2693 EDA 2012, 2014 WL 10979765, at

*2 (Pa. Super. Ct. Mar. 17, 2014).

This conclusion was not contrary to, or an

unreasonable application of, federal law, or "based on an

unreasonable determination of the facts." 28 U.S.C. § 2254(d).

11

The affidavit that formed the basis for the search warrant

stated that a witness, who was known to the affiant, told the

police that on the night of the murder, the witness walked with

Petitioner to a lot at 20th and Hagert Street, where Petitioner

retrieved a shotgun. Petitioner and the witness then walked to

what would become the scene of the crime. Petitioner pulled out

the shotgun and demanded that Robbins (the victim) give him his

money and personal property; the witness saw Petitioner shoot

Robbins when Robbins refused. The witness also identified a

photo of Petitioner as the person who shot Robbins. Finally, the

affiant noted that Petitioner's last known address was 2034 West

Hagert Street, which is just a few houses away from the lot

where he retrieved the shotgun.[1] Resp. Ex. C, ECF No. 16-3.

　　　　Given these sworn facts, the state court was not

unreasonable in concluding that the magistrate had a substantial

basis for finding probable cause. It also follows that counsel

was not ineffective in failing to move to suppress, because

---

[1]     Petitioner contends in his Objections that 2034 West
Hagert Street was not his residence, but his mother's. In
support of this claim, he offers: (1) a lease, and (2) a form
with some details of his supervision history (he was on parole
at the time of the murder). Pet'r's Objs. Exs. A & B, ECF No.
18. The second form contains no addresses and is thus unhelpful.
The first one is a lease for 1014 Dauphin Street, not 2034 West
Hagert Street. However, because the lease was month-to-month and
began in March 2004, roughly 18 months before the murder, the
lease does not actually prove that Petitioner was living at 1014
Dauphin Street at the time of the crime.

Petitioner cannot show prejudice if a motion to suppress based on lack of probable cause would have been unsuccessful. Accordingly, the Court will overrule Petitioner's objection with respect to this claim.

### 2.   Failure to Present Alibi Witness

Next, Petitioner argues that trial counsel was ineffective in failing to call his girlfriend, Tiata Newsome, as an alibi witness, and that PCRA counsel was ineffective in failing to raise this claim in the PCRA petition.

Judge Heffley concluded, R&R at 12-13, and Petitioner concedes, Objs. at 8, that this claim is procedurally defaulted. Petitioner argues, however, that his default should be excused under Martinez v. Ryan, 566 U.S. 1 (2012). In Martinez, the United States Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 9. In order to overcome procedural default under these circumstances, the petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 14.

Here, Petitioner cannot demonstrate that his underlying claim has merit, because he stated on the record during trial that he agreed with his lawyer's decision not to call any witnesses:

> THE COURT: Inasmuch as counsel has also indicated that he does not intend to call any witnesses, were there any witnesses that you told your attorney about that you wanted him to call and he has not called?
>
> THE DEFENDANT: No.
>
> THE COURT: Are there any witnesses that were available that you've told your attorney about that you wanted him to call and he has not called?
>
> THE DEFENDANT: No.
>
> THE COURT: So you're in agreement with his decision that there will not be any witnesses called in this matter, is that correct?
>
> THE DEFENDANT: Yes, ma'am.

Trial Tr. Vol. 3 at 74:2-17, Mar. 23, 2007. "Where a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel." United States v. Weaver, 882 F.2d 1128, 1140 (7th Cir. 1989) (citing United States v. Williams, 631 F.2d 198, 204 (3d Cir. 1980)); United States v. Mathis, No. 93-454, 1995 WL 303637, at *2 (E.D. Pa. May 17, 1995) (petitioner could not

14

pursue an ineffective assistance claim because he "fully agreed with the strategy recommended by trial counsel").[2]

Accordingly, the Court will overrule Petitioner's objection and deny this claim.

### 3.  Failure to Offer Expert Witness

Finally, Petitioner argues that trial counsel provided ineffective assistance by failing to present an expert witness who could rebut the testimony of the Commonwealth's ballistics expert, who testified that the slug recovered from the victim's body was consistent with the type of ammunition seized from 2034 West Hagert Street.

Petitioner concedes that this claim is also procedurally defaulted, Objs. at 14, but again argues that the default should be excused due to PCRA counsel's ineffectiveness in failing to raise this claim in the PCRA petition. This argument has several problems.

---

[2]     Moreover, even had Petitioner not explicitly concurred with trial counsel's decision not to call an alibi witness, it is unlikely that he could demonstrate prejudice, because alibi testimony from a loved one – Plaintiff's girlfriend, in this case – is often less credible than the testimony of a more objective witness, due to the potential for bias. See Hess v. Mazurkiewicz, 135 F.3d 905, 909 (3d Cir. 1998) (citing Romero v. Tansy, 46 F.3d 1024, 1030) (10th Cir. 1995)); Nelson v. Varano, No. 11-7257, 2015 WL 1134124, at *18 (E.D. Pa. Mar. 12, 2015) ("Alibi testimony from Petitioner's girlfriend would have been neither credible nor helpful to Petitioner because she would be obviously biased.").

First, as discussed above, Petitioner cannot pursue this claim of ineffective assistance because he agreed with counsel's decision not to call any witnesses. Petitioner states in his objections that this decision – as well as the decision not to call an alibi witness – was based on trial counsel's "faulty advice that the Prosecution witnesses had no credi[bility] and he would prove Mr. Newsome was the culprit." Objs. at 16. But "the mere fact that [a] trial strategy ultimately proved unsuccessful does not render it unreasonable." Commonwealth v. Spotz, 896 A.2d 1191, 1235 (Pa. 2006). Similarly, Petitioner's reliance on counsel's advice was not rendered unknowing simply because counsel was wrong about whether the recommended strategy would succeed.

Even if Petitioner had not agreed with counsel's advice – or even if that agreement were somehow meaningless now – Petitioner has not shown that counsel's decision not to employ an expert witness caused him any prejudice. Specifically, Petitioner contends that counsel should have called an expert witness and asked him or her: (1) why the weight of the slug retrieved from the victim's body was not precisely the same weight as an ordinary one-ounce slug; (2) whether the slug might have been fired from a 16-gauge or 12-gauge shotgun, not just a 20-gauge shotgun; and (3) whether the slug retrieved from the victim's body was consistent with any types of ammunition other

16

than the one retrieved from 2034 West Hagert Street. See Objs.
at 15-16; Pet'r's Mem. Law. at 25. But Petitioner has not
demonstrated that there is a reasonable probability that the
answers to any of these questions would have changed the result
of his trial. For example, as to the weight of the slug, the
Commonwealth's expert testified that one reason the slug was
consistent with those retrieved from 2034 West Hagert Street is
that the slug weighed 437.9 grains, and one-ounce slugs, such as
those from the residence, ordinarily weigh 437.5 grains. Trial
Tr. Vol. 2 at 270:7-19, Mar. 22, 2007. Petitioner has not
explained why the difference between 437.5 grains – exactly
equivalent to one ounce – and 437.9 grains – equivalent to
1.0009143 ounces – is meaningful here. Moreover, Petitioner's
counsel did elicit helpful testimony from the Commonwealth's
expert, who conceded that the slug could not be matched to any
weapon.

Under these circumstances, Petitioner has not shown
that trial counsel was ineffective in failing to call an expert
witness, or that PCRA counsel was ineffective in failing to
raise this claim. Accordingly, the Court will overrule
Petitioner's objection and deny the claim.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). The Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## V.   CONCLUSION

For the foregoing reasons, the Court will approve and adopt Judge Heffley's Report and Recommendation, overrule Petitioner's objections thereto, deny Petitioner's request to amend, and deny the Petition for a Writ of Habeas Corpus without an evidentiary hearing or certificate of appealability.